**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

and

**International Molders and Allied Workers Union, Local # 214, AFL–CIO, Intervenor,**

v.

**SCHMUTZ FOUNDRY AND MACHINE COMPANY, Respondent.**

No. 81–1026.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1982.

Decided May 20, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Linda Weisel, N.L.R.B., Washington, D. C., for petitioner.

John S. Greenebaum, Thomas C. Fenton, Louisville, Ky., for respondent.

Before EDWARDS, Chief Judge, KENNEDY, Circuit Judge and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order in this section 8(a) dispute (29 U.S.C. § 158(a)) reported at 251 N.L.R.B. 1494 (1980). The International Molders and Allied Workers Union, Local 214, AFL–CIO has intervened on the side of the Board while the Schmutz Foundry and Machine Company resists enforcement both by brief and oral argument.

On review of this entire record, we find substantial evidence to support the findings of fact and conclusions of law entered by the Board and therefore grant enforcement of the Board's order.

The basic issue in this case concerns whether or not the Company in fact ever closed its foundry in November 1977 during negotiations for renewal of a contract, six months after an impasse had been reached over vacation pay. The events preceding the impasse included a long history of collective bargaining beginning with the Board's certification of this Union as the exclusive bargaining agent for the Company's foundry workers in February 1956. With the expiration of an agreement in April 1977, negotiations continued while employees continued to work until May 5, when the employees struck. Sporadic negotiations continued until November when, as the ALJ and Board found, the Union notified the federal mediator that it would accept the Company's proposal as to vacations and return to work. The Company, speaking through the mediator, subsequently told the Union that its offer had come too late because the Company had "closed the foundry." Approximately one year later, the Company began limited production at the foundry, originally hiring back three former employees and refusing to recognize the Union on demand.

The Company contends that in November 1977 the foundry was "officially out of business" and that its employees were terminated. The ALJ and the Board found, however, that the Company's failure to resume operations in November 1977 "in effect constituted a lockout for the purpose of getting rid of the Union" and that "the foundry operation was resumed only when Respondent concluded that it would no longer have to recognize the Union."

While we recognize that these last two conclusions are strongly disputed by the Company, there is substantial evidence in this whole record to support the Board's affirmance of these findings.

For the reasons set forth above, the Board's order will be enforced.